UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JUSTINO J. ORTIZ,

                Plaintiff,

-against-                             **MEMORANDUM AND ORDER**

DEPARTMENT OF EDUCATION OF NYC        11-CV-6027 (SLT) (SMG)
("DOE"), *et al.*,

                Defendants.
-------------------------------------------------------------x

**TOWNES, United States District Judge:**

      Plaintiff Justino Ortiz, a former New York City schoolteacher, brings this action against the New York City Department of Education (the "DOE"); former New York City Mayor Michael Bloomberg; two former Chancellors of the DOE; two other high-ranking DOE officials and one of his former colleagues, Yolanda Montas, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. (the "ADEA"); and 42 U.S.C. § 1983 ("§ 1983"). There are currently two motions pending in this case: (1) the defendants' motion to dismiss the amended complaint in this action and (2) plaintiff's letter-motion for reconsideration of this Court's order dated November 4, 2013. For the reasons set forth below, plaintiff's motion for reconsideration is denied. However, since the Court intends to consider certain matters outside the pleadings in deciding the motion to dismiss, that motion is converted into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) and the parties will be given an opportunity to present additional materials as specified below. *See* Fed. R. Civ. P. 12(d).

### *BACKGROUND*

      The following facts are drawn from plaintiff's First Amended Complaint (hereafter, "Complaint"), the allegations of which are assumed to be true for purposes of this Memorandum and Order. Plaintiff was born in Puerto Rico and was 67 years old in mid-October 2012, when

the Complaint was filed (¶ 101).[1]  Plaintiff has been employed by the DOE since the 2000-2001 school year, and became tenured in 2004 (¶¶ 104, 106).  Throughout his career with the DOE, plaintiff taught mathematics to seventh- and eighth-grade students in Brooklyn public schools.

In September 2004, plaintiff began working at IS 171, also called the Abraham Lincoln School (¶ 106).  At that time, the principal of the school was a Ms. Beckman (¶¶ 107). According to the Complaint, plaintiff's students "always performed better than in other class in IS 171 and better than in comparable schools on the standardized eighth grade Math Tests" (¶ 109), and plaintiff was "highly regarded by students, parents[,] faculty and administration" (¶ 107).

In the 2005-2006 school year, a Dominican woman named Yolanda Fustanio began working at IS 171 as a "literacy coach" (¶ 110).  Within a year, she became an Assistant Principal and "began to ... take charge of everything" (¶ 111).  According to plaintiff, Fustanio's "meteoric elevation" was due to her romantic relationship with Martin Weinstein, who became the Superintendent of the Community School District in which IS 171 is located in the Spring of 2006 (¶ 112-13).

As soon as Fustanio became Assistant Principal, she allegedly "began making the work place intolerable for all the Puerto Rican teachers" (¶ 115).  Fustanio first made changes to plaintiff's schedule to "strain and test his mental and physical limits" (¶ 118).  She assigned him to "hall duty" during his only free period, thereby "eliminating his only recuperative, preparation, or administrative ... time during the day ..." (¶¶ 116).  She also "arranged for his ... classes to be assigned to 12 different rooms during each week," and "always" scheduled "back-

---

[1]Numbers in parentheses preceded by "¶" denote paragraphs in the Complaint.

to-back classes ... on different floors of the building" (¶ 118). The Complaint asserts that this "was not a random assignment of the available classrooms," claiming "it surely on a probability basis has to [be] an ordered arrangement, to purposely assign plaintiff most distant room" (¶ 118).

Although Fustanio allegedly "intended to negatively impact his teaching" by preventing plaintiff from "setting up demonstration materials to be used later in the day" (¶ 121), plaintiff "frustrated Fustanio by transcending rather than succumbing to her attempts to harass him" (¶ 122). He became "very efficient" in setting up and taking down his teaching materials, which he carted around the school building (¶ 121). According to the Complaint, plaintiff's "teaching remained outstanding as demonstrated by student progress benchmarks on standardized tests, grade wide assessments within the school, and the excellent progress of students repeating the course," who typically do worse on their second or third attempts to pass a course (¶ 123).

Fustanio next removed the students who were excelling in plaintiff's course, allegedly to enable her to assert that plaintiff's "teaching skills were deteriorating by comparing the achievement of this year's cohort to prior years" (¶ 124). To counter this ploy, plaintiff obtained the standardized scores of the removed students "so he could calculate his real progress with each cohort he began with in seventh grade" (¶ 125). Although plaintiff was subsequently denied access to the standardized test scores of students no longer in his class—purportedly, in an effort to prevent him from performing these calculations (¶ 126)—the Complaint does not allege that plaintiff was ever disciplined for declining test scores.

Rather, plaintiff faced disciplinary charges based on allegedly fabricated charges of sexual misconduct. The Complaint alleges that Yolanda Montas—who "taught the reading and

3

writing portion of the curriculum to the same students to whom Mr. Ortiz taught Math and Science" (¶ 15)—was integrally involved in the fabrication of these charges. However, the Complaint offers two different versions of Montas' involvement.

The first version alleges that "between approximately January and February, 2008," Montas met with "three to four girls" frequently and "coached [them] to discuss and then write up all the 'bad things' they were told that they could think up to say about Mr. Ortiz" (*id*.). When she received drafts of their statements, Montas "corrected/edited" them, then returned the drafts so that the girls could copy them in their own handwriting (*id*.; *see* Complaint, p. 1). The final drafts were dated "on or about June 10-11, 2008," and apparently served as the basis for the disciplinary charges (¶ 15).

The second version implies that the girls' statements had their genesis in an incident which occurred during the second week of June 2008, after plaintiff informed a new student, Roccio Corcino, that her grade would be an "incomplete" (¶¶ 140-41). Apparently aware that such a grade would necessitate attendance at summer school, Corcino "flew into a rage, demanded a grade of ninety, said she would get even, and stormed out of the room" (¶ 142). Although "Corcino certainly appeared in a frame of mind that she would welcome venting and spewing whatever hyperbole came to mind or was suggested to her that was detrimental" to plaintiff (¶ 143), plaintiff does not know exactly what happened next. The Complaint states:

> Whether [Corcino] sought out the teacher who had been encouraging her to speak against Mr. Ortiz and then the teacher used her comments to solicit other students to join or whether Corcino took two friends with her to bolster the effect of her vengeance against Ortiz, there is no reason to doubt the allegation that three students approached a teacher, on or about June 10, 2008. Plaintiff can only piece together the actual dynamics of what occurred in retrospect as it was sometime before he learned

4

> what was being alleged ... and can only remember Corcino as
> being a trigger to some students finally acquiescing to the long
> term urging by, at least, Ms. Montas (¶¶ 144-45).

Eventually, students who were taught Math and Science by plaintiff but other subjects by another Puerto Rican teacher, Ms. Crespo, also made accusations against plaintiff. Plaintiff apparently lacks personal knowledge as to how many of Crespo's students made accusations. The Complaint states only that "it is alleged that four of Montas['] students and six of Crespo's student[s] participated in making the allegations," and that "this assertion is quadruple hearsay in the report" of the Special Commissioner for Investigation for the DOE (the "SCI"), which investigated the allegations (¶ 135; brackets added). Although "Crespo's narrative" of what she claimed to have "'elicited' from the students ... was used to initiate the SCI investigation" (¶ 132), plaintiff asserts that Fustanio either "forced Crespo to allege that a few of her students [made] ... 'bad comments' against Mr. Ortiz," or forced her "to coerce her students" to make the allegations (¶¶ 131-32).

While the students' complaints alleged incidents which "purportedly occurred over the course of the two years during which the students were taught by Mr. Ortiz," the complaints themselves were all made on or about June 10, 2008, just as Principal Beckman was about to retire (Complaint, p. 2). The SCI "sent out two investigators who interviewed the about-to-become Principal Fustanio, but not the actual Principal Beckman" (*id.*). The investigators "accepted ... Fustanio's version of what she was told by the teacher who coached the students to write and then rewrite incorporating the teacher's suggestions [into] their statements to her satisfaction" (*id.*). The SCI then conducted an investigation which, according to the Complaint, was inadequate in many respects (¶ 156).

5

Defendant Regina Loughran, the First Deputy Special Commissioner for Investigation, then drafted a report which concluded that the charges against plaintiff were "substantiated" (Complaint, p. 2; ¶ 157). The Complaint alleges that Loughran relied, "as she always does," on the "raw notes of the investigators," who were "retired senior detectives of the NYPD" (Complaint, p. 2). This report formed "the basis for a presumptive finding of 'probable cause' and caused Plaintiff to be taken off the payroll" (¶ 157).

Plaintiff—unaware that he could be represented by the New York State Unified Teachers union (the "NYSUT")—consulted a private attorney (¶ 159). As a result, the NYSUT declined to represent him (¶¶ 160-61). Plaintiff retained private counsel, who is described in the Complaint as "the most established [N.Y. Educ. Law] 3020-a private counsel" (Complaint, p. 3).

The disciplinary hearing began "several months" after plaintiff was removed from the payroll (¶ 158). The Complaint offers a litany of general problems with such hearings. For example, the pleading alleges that the arbitrators who preside over such proceedings are "pronouncedly pro-DOE" because they want to continue to remain on the DOE's "honed ... panel of permanent arbitrators" (¶ 163; ellipsis added); that the arbitrators are "intimidated by the DOE attorneys" (¶ 162); and that "[s]idebars are off the record so there is no evidence of collusion"
(¶ 165).

Because the Complaint names Theresa Europe—the head of the DOE's "Administrative Trials Unit" (Complaint, p. 5)—as a defendant, this Court will focus on the alleged problems relating to the conduct of the DOE's attorneys. According to the Complaint, "[d]iscovery is not complied with ... even when the hearing officer rules that the materials must be turned over" and

6

suffers no consequences for this failure (¶ 166). At such hearings, "[t]here is constant prosecutorial misconduct in getting on the record all sorts of testimony that the hearing officers has repeatedly ruled excluded" (¶ 167). When the respondent has exculpatory evidence, "there is unrelenting objection and argument and wearing the arbitrator down" (¶ 168).

The Complaint does not specifically allege that any of the misconduct identified above occurred in his case. Rather, the pleading indicates that on February 1, 2010, plaintiff elected to accept a mid-hearing settlement and resign. The pleading further asserts that plaintiff settled because of problems with counsel. According to the Complaint, plaintiff fired his attorney during the hearing for "failing to probe glaring contradictions in [an] adverse witness' cross-examination" (Complaint, p. 3). Given only one week to retain new counsel or else proceed *pro se*, plaintiff hired an attorney who "had no appropriate training or experience for the Ed. L. 3020-a proceeding but assured plaintiff that he could handle the matter" (*id*.). That attorney was given only two weeks to "prepare to enter mid-trial in a trial that had been on going [*sic*] for several months" (*id*.). "In over his head, ... counsel wrongly advised him to settle[ ] on DOE[']s terms," and, together with the DOE's attorney, "coerced plaintiff to accept a terrible settlement of adhesion which got him absolutely nothing" (*id*., n. 1; ellipses and brackets added).

The Complaint does not allege any facts regarding the settlement negotiations to substantiate the claim of coercion. In addition, the Complaint does attach a copy of the Settlement Agreement itself or describe its terms with any specificity. The pleading indicates, however, that plaintiff "had to sign that he would not file any action or seek any due process whether for return of his job or even for the pain and suffering that he endured at the wilful actions of ... each of the ... defendants, even unrelated to the termination *per se*" (¶ 203).

7

*The EEOC Charge and Commencement of this Action*

At some point after his resignation, plaintiff, proceeding *pro se*, filed a charge of discrimination with the EEOC (¶ 6). Although the charge alleged race and age discrimination, plaintiff's description of the race discrimination "requested investigation of animus and treatment to [*sic*] Puerto Ricans by Dominicans" (*id*.). Plaintiff alleges that it would have been apparent to EEOC investigators that "a 'national origin' claim was intended and mistakenly called 'race'" (*id*.).

On September 6, 2011, the EEOC issued a right-to-sue letter (*id.*). On December 9, 2011—91 days after his receipt of that letter—plaintiff commenced this action against nine defendants, which can be grouped into two categories. The first group (hereafter, the "DOE Defendants") consisted of the DOE, then-Chancellor Klein, and five DOE employees—Fustanio, Montas, Weinstein, Europe and Loughran—who were sued in both their official and individual capacities. The second group consisted of the remaining two defendants: the NYSUT's General Counsel's Office and the union's General Counsel, James R. Sandner (collectively, the "Union Defendants"). The complaint contained three causes of action: a Title VII claim alleging national original discrimination; an ADEA claim; and civil rights claims against the defendants in both their official and individual capacities.

On December 12, 2011, plaintiff's counsel, Joy Hochstadt, sent this Court a four-page letter explaining in detail why the complaint was not filed until December 9, 2011. That letter conceded that plaintiff's employment discrimination claims were untimely, but argued that the 90-day deadline should be equitably tolled for various reasons. Plaintiff's counsel urged the Court to rule on the letter-motion *ex parte*, but stated that counsel would serve the letter along

with the motion "so that defendants may address this issue in their initial response." *See* Letter to Hon. Sandra L. Townes from Joy Hochstadt, Esq., dated Dec. 12, 2011, p. 4 (docketed as Document 2).

In an endorsed order dated February 10, 2012, this Court denied the letter-motion as premature. The Court noted that if the DOE sought to dismiss the Title VII claims as untimely filed, plaintiff could "include the argument raised in the instant motion in his opposition papers" (Endorsed Order dated Feb. 10, 2012, and filed Feb. 14, 2014).

With the exception of Fustanio and Weinstein, all of the defendants subsequently requested permission to move to dismiss the complaint. First, Corporation Counsel's Office filed a pre-motion conference request dated May 22, 2012, which sought permission to move to dismiss on behalf of the DOE, Chancellor Klein and defendants Europe, Montas and Loughlin (who had been incorrectly sued as Loughran). *See* Letter to Hon. Sandra L. Townes from Asst. Corp. Counsel James L Hallman, dated May 22, 2012. That letter made no mention of defendant Weinstein and specifically stated that Corporation Counsel was in the process of determining whether to represent Fustanio. One week later, the NYSUT also filed a pre-motion conference request. *See* Letter to Hon. Sandra L. Townes from Assoc. Counsel Oriana Vigliotti dated May 29, 2012. By order dated July 2, 2012, this Court granted both pre-motion conference requests.

On October 16, 2012—after the motions to dismiss had been served on plaintiff and shortly before the opposition papers were due, plaintiff filed an amended complaint, which is referred to as the Complaint herein. That pleading did not name Fustanio, Weinstein or either of the Union Defendants. On October 24, 2012, this Court entered an order which gave defendants leave to serve an amended motion to dismiss on or before November 30, 2012. That order also

9

directed plaintiff to serve his opposition papers on or before December 31, 2012, and gave defendants until January 18, 2013, in which to serve their reply, if any, and file the fully briefed motion. Although that motion was subsequently amended, the briefing schedule was not altered.

In a letter dated December 24, 2012, plaintiff's counsel acknowledged receipt of defendants' motion papers, and requested that her time to respond be extended to January 30, 2013. *See* Letter to Hon. Sandra L. Townes from Joy Hochstadt dated Dec. 24, 2012. The Court granted that request. However, the fully briefed motion still had not been filed as of mid-October 2013. Accordingly, on October 18, 2013, the Court entered an order which directed the DOE Defendants to file their motion papers, any opposition papers which they had received from plaintiff, and their reply on or before October 25, 2013. That order specifically provided: "If the DOE Defendants have not been served with opposition papers as of the date of this order, this Court will treat the DOE Defendants' motion as unopposed." Order dated Oct. 18, 2013, pp. 2-3.

*The DOE Defendants' Motion*

The DOE Defendants immediately complied with that order by filing their motion papers. Those papers consisted of a Notice of Motion dated November 30, 2012; a declaration executed by the DOE Defendants' counsel, James L. Hallman (the "Hallman Declaration"), which attached four exhibits; and "Defendants' Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint" (hereafter, "Defendants' Memo").

The memorandum of law contained three points, but only the first two are relevant to this Memorandum and Order. The first point argues that plaintiff's Title VII and ADEA claims are time-barred because plaintiff failed to commence this action within 90 days of his receipt of the

EEOC's right-to-sue letter. Although a copy of the right-to-sue letter is among the four exhibits attached to the Hallman Declaration, Defendants' Memo does not rely on that document. Rather, the first point principally relies on Ms. Hochstadt's letter dated December 12, 2011, in which she conceded that the complaint was untimely and sought to establish a basis for equitable tolling. *See* Defendants' Memo, pp. 9-10.

The second point argues that plaintiff's claims against the DOE Defendants are barred by a Stipulation of Settlement which ended plaintiff's disciplinary hearing. In making this argument, Defendants' Memo principally relies on the terms contained in paragraph 8 of that Stipulation, the entirety of which is attached to the Hallman Declaration as Exhibit 1. However, to establish that plaintiff entered into the Stipulation freely and voluntarily, without coercion or duress, the Hallman Declaration attaches as Exhibit 2 a portion of the transcript of the disciplinary hearing in which Hearing Officer Robin Gise discussed the Stipulation of Settlement with plaintiff. In addition, the Hallman Declaration attaches that portion of the collective bargaining agreement between the DOE and the United Federation of Teachers which sets forth provisions governing the pay of teachers who have been charged with sexual offenses involving students.

*The Lack of Opposition Papers*

When they filed their motion papers, the DOE Defendants did not file any opposition papers. This implies that the DOE Defendants had not received any opposition papers as of October 18, 2013. *See* Order dated Oct. 18. 2013, p. 2 (directing the DOE Defendants to file an opposition papers received by that date). On October 21 and 28, 2013, plaintiff's counsel filed two letters attempting to explain her failure to file opposition papers.

In the first letter, erroneously dated October 19, 2011 (the "First Letter"), plaintiff's counsel represented that the DOE Defendants' attorney, Assistant Corporation Counsel James L. Hallman, never served her with a notice of motion on November 30, 2102, but only with a memorandum of law. She argued that since a "Notice of Motion ... is the crucial *sine qua non* of placing a motion before the Court," Mr. Hallman "had not served [her] moving papers to oppose." Letter to Hon. Sandra L. Townes from Joy Hochstadt, dated Oct. 19, 2011, p. 1 (docketed as Document 26). Ms. Hochstadt claimed that she had nonetheless been "planning to serve Mr. Hallman [with] opposition papers," until she "was advised on good authority, that [she] should wait until [Mr. Hallman] realized what he had omitted and corrected his service, or otherwise contacted [her] ...." *Id.* (bracketed material added). However, Mr. Hallman never contacted her and Ms. Hochstadt made no attempt to contact him or the Court.

Ms. Hochstadt provided two reasons for her inaction. First, she stated that she had been unsuccessful in her attempts to contact plaintiff during the seven months between the service of the Amended Complaint and late July 2013. *Id.*, p. 2. She felt that she "could not inform the Court" of this fact "without it negatively affecting . . . [her] client's credibility, or his case." *Id.* In late July 2013, Ms. Hochstadt discovered that plaintiff failed to answer her mail, e-mail, or telephone calls because of health issues which rendered plaintiff "in a state of clinical depression." *Id.* Nonetheless, Ms. Hochstadt still did not contact Mr. Hallman or the Court, believing "it was still better to wait for the Court or the Defense" to contact her, so as "to allow [her] client more time to improve." *Id.* (brackets added).

Second, Ms. Hochstadt suggested a strategic reason for delaying this litigation. She postulated that "policies promulgated by the Bloomberg administration" are at the root of the discrimination alleged in this action. *Id.*, p. 1. She then states:

> My leaving the ball in Mr. Hallman's court (he never contacted me in eight intervening months), is very much in line with the [United Federation of Teacher's] . . . strategy . . .; the UFT is not going to approve more arbitrators to be coerced to fire good teachers if it can wait out Bloomberg's term.

First Letter, p. 2.

Although the First Letter was docketed as a "Letter Motion for Leave to File Opposition Documents," the letter itself did not specifically request any relief. It concluded:

> Now the service has been corrected, by Mr. Hallman's filing on ECF in response to Your Honor's Order. However, now that Mr. Hallman's motion has been served in its entirely on ECF, it is definitely Opposed by the Plaintiff. I need only review my Opposition papers with my client, add or correct anything that he advises me to change and file those papers as well as serve them on Mr. Hallman at the same time as soon as possible but no later than October 25, 2013 as per the Court's Order to Mr. Hallman, if he had them.

*Id.* The letter suggested that "Mr. Hallman might also be granted adequate time to reply" to plaintiff's opposition papers, and offered to produce plaintiff's medical records under seal to substantiate her allegations. *Id.*

Ms. Hochstadt's second letter, erroneously dated October 28, 2011, and docketed as a "Proposed Motion to Continue for two days" (the "Second Letter"), attempted to explain why no opposition papers had yet been filed, despite Ms. Hochstadt's prior assurances that they could be filed by October 25, 2013. That letter attached an e-mail exchange which implied that plaintiff did not update his counsel regarding changes to his e-mail address, rendering Ms. Hochstadt

13

unable to forward a draft of the opposition papers to plaintiff for his review. In the Second Letter, Ms. Hochstadt represented that she planned to send plaintiff a draft of the opposition papers on October 28, 2013; to receive "changes" from plaintiff by October 29, 2013, and to file the Opposition papers on October 30, 2013.

This Court did not construe the letters as motions for reconsideration or motions to extend the briefing schedule relating to the DOE Defendants' motion to dismiss the amended complaint. In a Memorandum and Order dated November 4, 2013, this Court noted that the two letters did not request any relief. The Court also ruled that, even if the letters could be construed as a motion for reconsideration or extension of time, the motions would be denied. Finally, the Court stated, "Unless plaintiff can advance a more convincing basis for reconsideration forthwith, this Court will consider the DOE Defendants' motion to dismiss unopposed and will decide the motion." Memorandum and Order dated Nov. 4, 2013, p. 7.

*The Motion for Reconsideration*

On November 5, 2013—the day after this Court entered its Memorandum and Order—plaintiff's counsel filed a two-page "letter motion" dated November 4, 2011, stating that plaintiff's opposition papers had "been filed on ECF for Your Honor's reconsideration." Letter to Hon. Sandra L. Townes from Joy Hochstadt, dated Nov. 4, 2011, p. 1 (docketed as Document 30). That letter did not set forth any reasons why this Court should reconsider its prior orders. Rather, it began with two paragraphs in which plaintiff's counsel essentially apologized to the Court and displayed a recognition that she should have proceeded differently. Specifically, the letter stated:

> I fully understand and appreciate Your Honor's Order of [November 4, 2013]. There is a limit to how much time can be

> allocated to a motion, no matter what the reason in hindsight. Now that I have that hindsight, I realize that as soon as I heard from my client, I should have informed the Court of the reason, and that not knowing the reason, before that, I could not prejudice Plaintiff's case by reporting that I did not know the reason.
>
> I should have submitted, for *in camera* or public perusal (depending on the content) declaration(s) from Plaintiff's physicians(s), including any further time the matter should have been stayed, so that the Plaintiff could participate.

*Id*.

The rest of the letter discussed evidence which plaintiff's counsel had received from her client. Most of that evidence related to the manner in which SCI conducted its investigation or to events which occurred during the disciplinary hearing. Some of that evidence was contained in voluminous exhibits attached to Hochstadt's Declaration Pursuant to 28 U.S.C. § 1746, which was filed with the letter-motion along with Plaintiff's Memorandum of Law in Opposition to Defense Motion to Dismiss.

## *DISCUSSION*

### *A. The Motion for Reconsideration*

Since the letter-motion filed by plaintiff on November 5, 2013, purports to be a "Letter Motion for Reconsideration" of this Court's November 4, 2013, Memorandum and Order, this Court will analyze it under Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for any of six enumerated reasons. Although the sixth reason is "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6), "[t]he standard for granting such a motion is strict ...." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "[R]econsideration will generally be denied unless the moving party can point to

controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id*.

Plaintiff's letter-motion for reconsideration in this case does not suggest that this Court overlooked anything in issuing its prior Orders. Rather, the letter-motion tacitly admits that this Court's November 4, 2013, Memorandum and Order was correct. Plaintiff's counsel does not dispute the fact that she did not comply with the Court's deadline for serving defendants with her response to their motion to dismiss. Moreover, she offers no evidence to suggest that the failure to comply with the deadline was inadvertent or to otherwise explain the failure. Indeed, plaintiff's counsel's earlier letter to this Court, erroneously dated October 19, 2011, made it abundantly clear that she deliberately missed the deadline for filing opposition papers for strategic reasons. Plaintiff's letter-motion for reconsideration is, therefore, denied.

## B. *The Motion to Dismiss*

Even though the DOE Defendants' motion to dismiss is deemed unopposed, the Court is nevertheless required to review the merits of the defendants' arguments. *See McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."); *Foster v. Phillips*, No. 03 CIV 3629 MBM DF, 2005 WL 2978686, at *3 (S.D.N.Y. Nov. 7, 2005) ("where a Rule 12(b) motion has not been opposed, this Court must review the merits of the motion and determine whether the movant has carried its burden."). In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). However, "the tenet that a court must accept as true all of the

16

allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. If a party has not "nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id*. at 570. Even if the complaint does not plausibly state a claim to relief, the court must grant leave to amend the complaint if a liberal reading of the pleading "gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *See also Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

When considering a Rule 12(b)(6) motion, materials outside the pleadings are "generally not considered … unless the court treats [the motion] as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03–CV–6233 (JBW), 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004) (brackets added). Aside from the allegations in the complaint, which are assumed to be true, a court can consider only "documents attached to the complaint as an exhibit or incorporated in it by reference, … matters of which judicial notice may be taken, or … documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). If matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment and all parties must be given a reasonable opportunity to present material pertinent to the motion. Fed. R. Civ. P. 12(d).

In this case, Defendants' Memo relies on several documents which are outside the pleadings. First, in arguing that plaintiff's employment discrimination claims are untimely, the DOE Defendants rely, in part, on plaintiff counsel's letter dated December 12, 2011, which concedes that the action was untimely filed. *See* Defendants' Memo, pp. 9-10. Second, in arguing that plaintiff's claims are barred by Stipulation of Settlement, the DOE Defendants rely on the terms of the Stipulation itself, portions of the transcript of the disciplinary hearing, and portions of the collective bargaining agreement between the DOE and the United Federation of Teachers.

In deciding the DOE Defendants' motion, this Court intends to take into consideration all of the documents referenced in the preceding paragraph. It might be possible to take some, or even all, of these documents into consideration without converting this motion to a motion for summary judgment. After all, plaintiff's counsel herself authored the letter dated December 12, 2011, and the Complaint refers to the Stipulation of Settlement and to terms of the collective bargaining agreement. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."). However, in an abundance of caution, this Court will convert the DOE Defendants' motion to dismiss into a motion for summary judgment and will give all parties a reasonable opportunity to present all the material that is pertinent to the issues raised in the first two points of Defendants' Memo.

## *CONCLUSION*

For the reasons set forth above, plaintiff's letter-motion for reconsideration of this Court's November 4, 2013, order is denied. However, since this Court intends to consider matter outside the pleadings, the DOE Defendants' motion to dismiss is converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Plaintiff shall have until October 24, 2014, in which to electronically file any additional materials pertinent to the first two points of Defendants' Memo. Plaintiff is reminded that, in order to be considered upon a motion for summary judgment, those materials should be in admissible form. The DOE Defendants shall have until November 17, 2014, to provide any materials responsive to Plaintiff's submissions.

**SO ORDERED**.

/s/
SANDRA L. TOWNES
United States District Judge

Dated: September 30, 2014
       Brooklyn, New York
.